The Circuit Court dismissed relying on Boylan and Hoffman saying it wasn't reasonably foreseeable that the car would deviate from the roadway, and therefore these allegations of guy wiring don't apply because there was no duty. On appeal, plaintiffs, much like here, they attempt to distinguish the previous cases, Boylan and Hoffman saying, well those cases dealt with placement of the pole versus installation. But we've got the same argument here. They're just changing out installation with maintenance. They're saying, well, this case is distinguishable because it has to do with maintenance and inspection and not installation. In both Boylan and Hoffman, the court found that there wasn't a duty because it was not reasonably foreseeable that the car would deviate from the ordinary course of travel. Engaged plaintiffs also argued that the burden of installing these guy wires was not great because the utility company should have been doing it anyhow in accordance with standards. Well, that's the same argument they're making here concerning inspection. Moreover, claimed the plaintiff, it was reasonably foreseeable that an improperly guided pole could fall for any number of reasons. It could fall, like Your Honor suggested, just randomly on a car driving down the road. And this court agreed with those arguments. But the Supreme Court, in reversing, said no. The relevant inquiry is whether the car, whether the deviation was reasonably foreseeable. And because it wasn't, no duty was owed. And specifically, they noted the rulings of the appellate court in Boylan and Hoffman and said those holdings serve for the proposition that companies owe no duty. No duty. They don't differentiate between maintenance, inspection, placing guy wires, installing padding. In the Miller case, plaintiffs claimed that the pole should have padding around it or the pole should have broken to lessen the impact. All these cases come to the same result. If the deviation isn't foreseeable, no duty is owed. Now, the Supreme Court to this day, in 2012, still realizes or still recognizes that accidents that are freakish, bizarre, and tacit are not reasonably foreseeable. So we necessarily look at the manner in which the accident occurred. But even if we don't, let's assume we do just look at the general character, whether or not the general character of this event was reasonably foreseeable. It wasn't. Because we have a pole that's 6.5, 6.5 feet from the roadway, and that's based on their own complaint. All right? The police officer did testify it was more than 6 feet, either way, 6 feet, 6.5 feet. It's elevated higher than that. In other words, once you leave the road, you go up slightly to get to this pole. There were no previous accidents with the pole, any pole on the roadway, and there were no accidents on the roadway known to Mr. Carver who had lived there for 16 years prior. And that's because the road serviced two homes, Molly Carver's and Molly Carver's grandparent. The speed limit on the road, 30 miles an hour.  The roadway was straight and flat, both at the location Gabby left the roadway and the location of the pole. Bernie Carver testified he could give no reason why anyone would speed down that road, teenagers or otherwise. And both of Molly's parents testified that they had no knowledge that these teens had done it on a couple of previous occasions. Now, if it's not reasonably foreseeable to the parents who live on that roadway, and they're one of two people who do, how can it be said that it's reasonably foreseeable to Aaron? It can't. Now, of course, I think simply on the grounds that it wasn't foreseeable is sufficient to affirm the trial court summary judgment. But let's look at the costs and the burdens, as Your Honor mentioned. The burden they're seeking to impose is a burden to prevent the pole from breaking when a car hits it. So they come up with this number, their expert comes up with this number, and how he gets there, I don't know. There are certainly issues with the affidavit, but let's take 30 miles an hour. There are other factors that have to be considered by a utility company in determining whether or not a pole—first of all, I don't know that you can go out and look at a pole and say, yeah, this looks like it will withstand the impact of 30 miles an hour from a car. But let's put that aside. Let's talk about weight. What if it was a Mack truck? Is it still 30 miles an hour? What if the pole was guy-wired, like in garage? And there's tension. What if there's tension from overhead wires? What if there's the weight of equipment, such as transformers up top? All of these would presumably play a role in determining whether or not a pole could withstand any particular impact. And I think that's an impossible burden for a utility company to meet. I don't think it is appropriate to impose that on a public utility or its rate payers. And not only that, but the likelihood of injury—we talked about preventing injury, right? Well, the likelihood of injury, I would submit, actually increases. And you see cases out there where the plaintiff's alleged the pole should have broken. In the Pollock case, a car left Lakeshore Drive, hit a steel post for a parking lot sign for Stolzer Field. Said the pole was improperly installed. It should have been a breakaway. The sign should have broken. And the court there held the deviation wasn't reasonable, so no duty was owed. But it just shows or just furthers the inference that if a car strikes an immovable object, a pole that doesn't break, the likelihood to damages or injuries from the impact actually would increase, presumably. And I would submit that if this pole hadn't broken, we may very well have five injuries. Now, they cite to Paget. First of all, Paget is from Florida. It has no binding authority here. I don't think it's persuasive, given the well-established case law in Illinois. And I would also note that since Paget, the Appellate Court of Florida has cited the Boiling case with approval for the general proposition of reasonably foreseeable deviations. The Bosbein case, as Justice Welch pointed out, is dissent in that case, involved standards. And that's what the court hung its hat on in differentiating Bosbein from Gottsch. They said there were standards included in a contract with IDOT. There were standards designed to prevent the type of harm that occurred. And Justice Welch aptly pointed out that this conflicted with Gottsch because standards don't establish the duty. Standards presuppose the duty. In other words, we don't get to the scope of a duty until we determine the duty exists. And without reasonable foreseeability, we don't. That being said, I think Bosbein can still be distinguished by the fact that there are standards alleged. They were designed to protect the plaintiff. Now, they claim that there are standards alleged in their expert's affidavit concerning inspection of the pole and Amer didn't inspect the pole. His affidavit doesn't say that. His affidavit says, pole need to be inspected every ten years. It doesn't say Amer failed to inspect it every ten years. And that's probably because Amer produced documents showing that it was inspected two years prior to this accident. And there was a contract with IDOT. So there was a contractual duty of sort. And that was a motion to dismiss case. So we're just looking at the sufficiency of the complaint. Here we're on summary judgment, and they have to produce evidence. Finally, and importantly at Bosbein, the court noted that there was no public benefit from the contractor storing these cement barriers in the median of I-57. It served no purpose. That's a stark contrast to what we have here, as long recognized by Illinois courts, the public benefit of having utility poles along public right-of-ways and roads. As to, you know, I think this case can be decided on the duty issue alone. As to the approximate cause issue, however, I don't think plaintiffs submitted any approximate cause either. The affidavit submitted by their wood expert presupposes a lot of supposed facts without any basis for those facts. And he says poles can typically, typically withstand impact from cars going 30 miles an hour. He goes on to conclude this car likely was going 30 miles an hour or less. How does he get there? He says, I don't think the testimony of the people in the car is accurate. He said, I looked at some photos, I looked at some depositions, and I think because airbags have been deployed and because the damage to this vehicle looks minimal to me, the car is going under 30 miles an hour. But his own affidavit has an internal conflict in it, irrespective of the Rule 191A issues. He claims that airbags would certainly deploy if the car was going over 50. He claims that we would certainly expect to see more damage to the vehicle if the car was going over 50. There's a 20 mile an hour gap there, Your Honors. So even if we set aside the fact that he doesn't attach any of these documents he relied upon, which the Illinois Supreme Court says is mandatory to do when you're submitting an affidavit in support of or opposition of summary judgment. I don't think his affidavit establishes a question of fact as to proximate cause. And it certainly doesn't affect you, because it doesn't talk about reasonable foreseeability of the deviation. The accident was certainly a terrible occurrence, but it's not an occurrence for which Ameren is subject to liability. If summary judgment in favor of Ameren was appropriate, it should be affirmed. Unless Your Honors have any questions. Thank you. Rebuttal. Your Honors, I think that an appropriate place to start is with the Gouge case, given counsel's argument relating to it. It's important that we understand that the issue that was presented there, quoting from the court, is we are confronted with the issue of whether utility companies owe a duty for the installation of the utility pole to motorists who deviate from the travel portion of a roadway and strike a utility pole. That's not what we're talking about here. We're talking about maintenance, and that's an important distinction to make. The court then went on to say, and I quote, utility companies do have a duty to exercise reasonable care in the installation and maintenance of their utility poles. It goes on and it says this duty is not being diminished. So what we've got here, we don't have a situation where the pole was improperly installed. We're not talking about where it was on the roadway. Counsel spent a lot of time arguing that this instance was unforeseeable. This deviation from the roadway was unforeseeable. There's no argument here that the car that Ollie was traveling in went off the roadway 400 plus feet. We're not arguing against that, but what we're saying is that this utility company, Amerit, could have reasonably foreseen that cars would leave the roadway, whether it was 6 1⁄2 feet or more. They could see that happening given the facts that we have in this case that was obviously foreseeable. The road was narrow. There's testimony in the case that traffic would go in both directions, requiring one of the cars to move off the roadway. We've got testimony in the case that the surface area was gravelly. We've got testimony that it was a dangerous area of travel. And given those factors, it's certainly foreseeable that a car would leave the road. And if a car does leave the road and hit that pole, is it foreseeable or is it necessary that the pole be maintained in a way that it doesn't collapse? The answer is yes. In the Gouch opinion, or none of the other opinions cited by defense counsel, prohibit this court from upholding and from forcing a maintenance burden on utility companies. Counsel also talks about the fact that this would be such a burden that they would be responsible for every time that a car left the roadway and hit a pole. They'd be responsible for every person in the area, every person that they were serving. That's not the case. The burden is maintain the poles so they don't fall. If the poles fall because the car was going too fast, if the poles fall because a semi-truck hit the pole, that's a different story. If the poles fall because they're not maintained properly, because they're decayed in the inside, because they should have been replaced 10 years prior, that's the problem. So if the companies go and follow the rules, inspect every 10 years, replace every 40, these circumstances don't happen. Now, it's also important that we hit on the proximate cause issue here. This court, I know understands, I'm sure understands, that there can be more than one proximate cause to an accident. Was a proximate cause of this accident the fact that the car that Molly was traveling in lost control, went through all those yards, came back on the road and hit the pole? Absolutely. But a cause of this accident, a legal cause of this accident, is also the fact that the pole was not properly maintained and therefore the wires collapsed. We have to remember that we're dealing with a scenario where these are electrical injuries. They're not from one force. The injury is not from striking a pole. The injury is because the pole was unable to withstand that force and collapse on top of the car, causing Molly to be energized, electrocuted when she stepped out. Nobody else in that car was hurt. Molly's the only one that sustained injuries, and it's because those wires fell down. With regard to the affidavit and the problems, the lower court did not address that. The lower court specifically dealt with the issue of duty. I would argue that the affidavit creates an issue of fact in that the client was able to testify to the facts that he did, particularly given his expertise, which are referenced in our brief. He looked at photos of the wood, which he is an expert in investigating. He testifies in injury cases that deal with situations where roads go off the car and hit utility poles and knows what those sorts of impacts to the cars, impacts to the utility poles look like. He's given many talks on the issues. He's made himself familiar with the issues, and he's determined that the damage to the cars indicate that the car was going 30 miles per hour or less. He's indicated that. Thank you, counsel. We will take this matter under advisement. Court will be in recess. All rise.